SAFETY INVESTMENT CORP. *v.* STATE LAND OFFICE BOARD.

1. FRAUD—ELEMENTS.

   To constitute actionable fraud it must appear with reasonable certainty that defendant made a material representation which was false, that he knew it was false or made recklessly without any knowledge of its truth and as a positive assertion, that it was made with the intention that it should be acted upon by plaintiff, that latter acted in reliance upon it and suffered damage, and the absence of any one of the elements bars recovery.

2. SAME—REPRESENTATION AS OWNER—SCAVENGER SALE.

   In action by tax title purchaser to set aside land contract issued by State land office board to defendant, as previous owner,

at so-called scavenger sale because of alleged fraud in representation that he was such owner, evidence failed to sustain claim of fraud where it was shown defendant purchaser had obtained deed from fee owner after plaintiff had served notice of redemption to all interested parties and had recorded proof of service of such notice but several years before the scavenger sale by State which had acquired title for nonpayment of taxes and statute authorized owner in fee to purchase land at scavenger sale (Act No. 155, § 5, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

3. SAME—FEE TITLE—OWNER—SCAVENGER SALE—TAXATION.

It was not actionable fraud on part of grantee under deed from fee owner of record, executed after tax title purchaser had served notice of redemption on all interested parties and had recorded proof of service of such notice but several years before so-called scavenger sale was held of the land, to represent to city treasurer that he was owner where statute then in force permitted such action (Act No. 155, § 5, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted December 11, 1943. (Docket No. 12, Calendar No. 42,438.) Decided February 24, 1944.

Bill by Safety Investment Corporation, a Michigan corporation, against State Land Office Board, Phillip B. Knight and wife to set aside a land contract and to require a sale of real estate. Decree for defendants. Plaintiff appeals. Affirmed.

*David M. Miro,* for plaintiff.

*George O. Hansen,* for defendants Knight.

BUSHNELL, J.   Plaintiff Safety Investment Corporation, claiming an interest in certain lands in the city of Detroit, filed a bill of complaint against defendants State land office board, Phillip B. Knight and Mary Knight, his wife, to set aside a certain land contract issued by the board, under the so-

called "scavenger act" (Act No. 155, Pub. Acts 1937, as amended by Acts Nos. 29, 244 and. 329, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 3723–1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 7.951 *et seq.*]), to Knight and his wife. Plaintiff asked the court to enter a decree directing the board again to offer the land in question for sale "as though the same were not in the first instance offered for sale."

The several defendants filed motions to dismiss, which were denied. Defendants Knight took the position in their answer that they were owners within the meaning of the above act, and denied plaintiff's claim of ownership. Plaintiff charged that the Knights were not owners and, therefore, were not entitled, under the act, to purchase the lots in question from the board, and that such purchase was brought about by their fraudulent acts. The basis of plaintiff's claim of fraud is a letter from Phillip B. Knight to the city treasurer of Detroit, dated January 19, 1940, which reads in part as follows:

"This is to signify that I am the owner of lots.

\*   \*   \*

"It is my desire that these properties be put up for sale in the forthcoming scavenger sale, as it is the only way I can clarify an inherited tax situation."

The matter was referred to a circuit court commissioner who found that plaintiff had become the owner of various tax titles, covering the property, by purchase at delinquent tax sales for the years 1921 through 1928; had served notice to all interested parties, and had recorded proof of service of such notices; that defendant Phillip B. Knight had purchased the lots from the Union Guardian Trust Company on August 3, 1934, and had received a deed from the Union Guardian Trust Company to

one Frederick Pugh, Knight's nominee, who deeded
to Knight on November 5, 1934, and that both deeds
were recorded on October 26, 1939. Neither plaintiff
nor Knight paid any taxes on the lots after their
respective purchases and the State acquired title
thereto, by reason of such nonpayment, on Novem-
ber 3, 1939. Subsequently the State sold these lots
on land contract at a scavenger sale to Knight as
a former "owner."

The commissioner found as a matter of law that
Knight was an "owner" within the meaning of that
term as used in the scavenger act, and that plaintiff
was likewise an owner. The commissioner was not
called upon to determine which party possessed the
greater interest, but was required to make a finding
only as to the allegation of Knight's fraudulent
act. As to this, the commissioner found that plain-
tiff's charge of fraud was not substantiated by the
evidence, nor could it be if Knight were an "owner"
within the meaning of that term as used in the act.

Objections were filed by plaintiff and considered
by the trial judge, who held that the commissioner's
findings of fact and law were correct. The trial
judge, in arriving at this conclusion, said:  .

"It is the opinion of this court, as it was the opin-
ion of the circuit court commissioner, that there
was no action or conduct on the part of the defend-
ants Knight and wife that was fraudulent in law.
The State of Michigan acted in full compliance with
the statute governing such sales. The same was
held according to law. All the duties and obliga-
tions imposed by the statutes were fulfilled and ex-
ecuted with the necessary regularity."

The legal elements of fraud are stated in *Cand-
ler* v. *Heigho,* 208 Mich. 115, 121, as follows:

" 'The general rule is that to constitute action-
able fraud it must appear: (1) That defendant made

a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.'" 20 Cyc. p. 13.

See, also, *Mesh* v. *Citrin,* 299 Mich. 527, 537. Measured by this rule, plaintiff's evidence failed to make out a case of actionable fraud. Under the "scavenger act" as it existed when Knight wrote his letter to the city treasurer on January 19, 1940, he was an "owner" and, therefore, his representation was not fraudulent. The statute (Act No. 155, § 5, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 3723-5, Stat. Ann. 1940 Cum. Supp. § 7.955]) then read:

"The term 'owner' as used in this act shall mean the owner in fee, mortgagee, land contract vendee, or one having a substantial interest by way of actual investment in the property, priority to be given the one having the largest financial investment in the property."

This statutory definition of "owner" was changed by section 5a of the act as added by Act No. 363, Pub. Acts 1941, but in the instant case the definition contained in the 1939 act controls.

We do not pass upon the ethics of the transaction. Knight did that which, by the statutes of this State, he was permitted to do, and we cannot hold that he was guilty of wrongdoing in exercising his rights as an "owner." See *Gledhill* v. *Fisher & Co.,* 272 Mich. 353, 364 (102 A. L. R. 1042).

The decree of the trial court is affirmed, with costs to appellees.

STARR, WIEST, BUTZEL, SHARPE, and BOYLES, JJ., concurred with BUSHNELL, J.

NORTH, C. J. (*concurring*). I concur in affirmance for the following reasons. Defendants Knight conclusively are the last owners in fee under the regular chain of title of the lots here involved. Appellant asserts it is the actual owner through tax titles which arose out of nonpayment of taxes by prior owners in the Knight chain of title. The burden of showing perfected tax titles through which it claims is upon appellant. On this hearing *de novo* I am unable to find that appellant has proven this essential fact as to State tax sales. As to sales for delinquent city taxes in Detroit, the purchaser obtained only a 99-year lease. This did not terminate the fee title ownership. Defendants Knight in 1940 were "owners" within the statute (Act No. 155, § 5, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 3723-5, Stat. Ann. 1940 Cum. Supp. § 7.955]) and were not guilty of fraudulent conduct, as alleged by plaintiff.

The decree entered in the circuit court is affirmed, with costs.

STARR and BUTZEL, JJ., concurred with NORTH, C. J. REID, J., took no part in the decision of this case.