PETERS *v.* BROOKS.

1. ACCOUNTING—BILL OF SALE—ACCORD AND SATISFACTION—LIENS.
    Finding of trial court in suit for accounting as to proceeds of
    sale of chattels hitherto used in automobile sales agency in
    which the parties had at one time been partners before
    plaintiffs sold their interest to defendant, that bill of sale
    had been given to defendant to enable him to liquidate the
    business rather than as an accord and satisfaction to resolve
    his claim that he had been defrauded by sale of the business
    to him at a grossly inflated price *held,* supported by record
    presented and justified court's imposition of lien on proceeds
    of auction sale.

2. FRAUD—SETTING ASIDE OPTION TO PURCHASE LAND.
    Trial court's order setting aside option to purchase land which
    had been given to defendant on his representation that he
    had a purchaser who would pay the agreed price and no more,
    a material representation that was relied upon by plaintiffs,
    *held,* proper, where such representation was false.

Appeal from Manistee; Stephens (Rupert B.), J.
Submitted March 5, 1963. (Calendar No. 61, Docket
No. 49,711.) Decided June 3, 1963.

Bill by Laban W. Peters and Elsie Peters against
Del Brooks for accounting and to set aside option
to purchase real estate. Decree for plaintiffs. De-
fendant appeals. Affirmed.

*John W. Claire,* for plaintiffs.

*Shivel, Phelps, Linsey & Strain (Leland D.
Phelps,* of counsel), for defendant.

REFERENCES FOR POINTS IN HEADNOTES

[1] 1 Am Jur 2d, Accounts and Accounting § 1 *et seq.*
[2] 24 Am Jur, Fraud and Deceit § 189 *et seq.*

SOURIS, J.  In 1953 plaintiffs sold their 1/2 interest in an automobile agency to defendant with whom they had been partners in Manistee and soon thereafter they retired to Florida.  For the purchase price they took defendant's promissory notes secured by a chattel mortgage on the business equipment, fixtures and inventory.  They also leased the land on which the business was operated to defendant.  Defendant made regular payments to plaintiffs in Florida for several years, the payments being allocated first to rent and then to interest and principal due on the promissory notes.  From 1958, no payments on principal and only sporadic payments on interest were made.  In 1961 plaintiffs gave defendant a bill of sale of the mortgaged chattels and also an option to purchase the realty on which the business was conducted.  Pursuant to plan, about which plaintiffs had been informed, defendant sold the chattels at auction but, contrary to plaintiffs' alleged expectations, he refused to pay them the proceeds of sale to apply upon the balance due on his obligations to them.

Thereupon, plaintiffs instituted suit in chancery for an accounting of the sale proceeds, rescission of the option and other relief.  Plaintiffs claimed that the bill of sale had been given as an accommodation to defendant in order to permit him more easily to liquidate the business, their understanding being that the sale proceeds would be applied to reduce his obligation to them.  They also claimed that the option on the land was given defendant on his misrepresentation that he had a purchaser for their land willing to pay them $17,500 whereas in truth defendant intended to purchase the property for his own account and for subsequent resale at a higher price.  It was defendant's claim in defense that plaintiffs had defrauded him in selling him their interest in the business at a grossly inflated price; that after

defendant finally confronted plaintiffs with his complaints regarding the purchase price he claimed was fraudulently excessive, an accord and satisfaction was reached by the parties as evidenced by the bill of sale; and that the land option ran to him personally, not as agent for plaintiffs or anyone else and that, in any event, he was ready and willing to pay plaintiffs the full $17,500 for which they had agreed to sell the land.

The chancellor made a full testimonial record in this case and filed a comprehensive opinion setting forth his findings and conclusions. He ruled there was no basis for defendant's assertions that he had been defrauded by plaintiffs and that the bill of sale evidenced an accord and satisfaction of his obligations to plaintiffs. He ruled, on the contrary, that defendant induced plaintiffs to give him the bill of sale with the agreement that the proceeds of the sale made possible thereby would be paid them on the balance due on his obligations to them. Apparently, the sale proceeds were still intact, for the chancellor imposed a lien upon the proceeds to be applied to defendant's indebtedness. With reference to the option, the chancellor noted that plaintiffs were elderly people unable to return to Manistee from Florida to look after their own affairs and that, because of their friendly relationship with defendant, they relied upon his misrepresentations of business conditions and land values in Manistee in agreeing to sell their property. He also concluded that letters from plaintiffs to defendant and other evidence supported their claim that defendant procured the option by purporting to act as their agent in selling their property for them to "the gas company" for $17,500. The chancellor set aside the option.

We have reviewed this record with care and are not persuaded the chancellor erred. The parties

treated this appeal as involving only questions of fact, and we agree. The proofs do not preponderate in favor of defendant's claim that the bill of sale was given to resolve a dispute between the parties regarding the original purchase price for plaintiffs' interest in the dealership and we find quite plausible the chancellor's conclusion that the bill of sale was given to accommodate defendant's sale of the business chattels. The chancellor's imposition of a lien on the sale proceeds to effectuate the agreement he found between the parties was well within the scope of powers available in equity to sustain a just claim. *Hess* v. *Haas,* 230 Mich 646, 652, cited in *Foster* v. *Ypsilanti Savings Bank,* 299 Mich 258, 268. Likewise, we find no basis for reversing the chancellor's order setting aside the option. The proofs disclose that defendant falsely represented to plaintiffs that a third-party purchaser was willing to pay $17,500 for their property, but no more; that the representation was material, particularly in view of defendant's having conditioned plaintiffs' belief that business was bad in Manistee and that land values were declining; and that plaintiffs relied to their detriment upon defendant's material misrepresentations induced by their friendship with defendant and because of plaintiffs' advancing years and their relative immobility. See cases collected in *Irwin* v. *Carlton,* 369 Mich 92.

Affirmed. Costs to plaintiffs.

Carr, C. J., and Dethmers, Kelly, Black, Kavanagh, Smith, and O'Hara, JJ., concurred.